**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **ALLSTAR LODGING, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 5:13cv00053** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WILLIAM ROOKARD, *et al.*,** | ) | **By: Hon. Michael F. Urbanski** |
| | ) | **United States District Judge** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on plaintiff Allstar Lodging, Inc., ("Allstar")'s motion to enforce judgment. (Dkt. No. 15). The judgment Allstar seeks to enforce is a consent injunction entered by the court on April 29, 2013. (Dkt. No. 13). Allstar filed the motion on September 6, 2013, and a hearing was held on September 26, 2013. After the hearing, the court permitted the parties to submit additional evidence. That evidence having been submitted, the matter is now ripe for adjudication. For the reasons stated herein, the court will grant the motion in part and deny it in part. Specifically, the court finds the pro se defendant William Rookard ("Rookard") in civil contempt for violating the injunction's non-disparagement clause and orders that he pay one thousand and sixty-one dollars ($1,061) in attorney's fees to Allstar.

## I.

Allstar, a company which rents vacation cabins in the Shenandoah Valley, originally brought suit against Rookard and his company SWI Technologies alleging violations of the Anti-Cybersquatting Consumer Protection Act and the Lanham Act, along with counterfeiting and

several pendant state law claims.  The parties were able to resolve the matter on mutually agreeable terms with the assistance of the Honorable James G. Welsh, United States Magistrate Judge.  The parties crafted a consent injunction, which was entered by the court.

The terms of the injunction, as drafted by the parties, required Rookard to provide ads for Allstar on four travel websites that he owned and operated.  The exact wording of the injunction is, in pertinent part, as follows:

> For a period of ten (10) years, Defendants shall provide the same a banner ad at the top of each home page as was previously provided, and be linked to allstarlodging.com, from each of the following websites: www.shenandoahlodging.com; www.visitluray.com; www.goluray.com; and www.vavacationcabins.com.

(Dkt. No. 13, at 2).  The injunction also contains a non-disparagement clause, which states that "the parties will refrain from making any verbal or written statement that disparages the other party."  Id.  Allstar contends that Rookard failed to place its ads on the top of these websites as required.  Allstar seems to take particular issue with the placement of other ads above its own. Allstar further asserts that its ads were not placed on the homepages of the websites identified in the injunction, but instead placed on the subpages of the websites relating to cabin rentals. Finally, Allstar argues that one of the ads placed by Rookard was disparaging.

## II.

The court's authority to award civil contempt damages "ha[s] long been recognized." Folk v. Wallace Bus. Forms, Inc., 394 F.2d 240, 244 (4th Cir. 1968) (collecting cases).  Civil contempt must be established by clear and convincing evidence, but willfulness is not a requirement.  JTH Tax, Inc. v. Noor, No. 2:11CV22, 2012 WL 4473252, at *2 (E.D. Va. Sept.

26, 2012) (internal citations omitted).[1]  A court must find four elements to establish civil

contempt:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

> (2) that the decree was in the movant's "favor;"

> (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and;

> (4) that [the] movant suffered harm as a result.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (quoting Colonial Williamsburg

Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133,

136 (4th Cir.1994)).

The court "enjoys broad discretion" in fashioning the appropriate remedy for civil

contempt, including the authority to award attorney's fees.  Noor, 2012 WL 4473252, at *5

(citing In re Gen. Motors Corp., 61 F.3d 256, 259 (4th Cir. 1995)).  Nevertheless, the remedy the

court crafts must be limited to either a remedial or compensatory purpose.  Eyeticket Corp. v.

Iridian Technologies, Inc., No. 1:00CV669, 2005 WL 2334683, at *3 (E.D. Va. Sept. 23, 2005)

(citing In re Gen. Motors, 61 F.3d at 259); see also Cromer v. Kraft Foods N. Am., Inc., 390 F.3d

812, 822 (4th Cir. 2004) (holding that putatively civil contempt sanctions will be held to be

criminal sanctions if they are neither conditioned on compliance with a court order nor tailored

to compensate the complaining party).  Furthermore, due to the strong preference for the

American Rule that each party bear its own costs, "a contemnor's refusal to comply with a Court

---

[1] Civil contempt differs from criminal contempt in that the former is remedial while the later is punitive.  See id. (quoting Bradley v. Am. Household, Inc., 378 F.3d 373, 378 (4th Cir. 2004)) (emphasis original) ("The basic difference between civil and criminal contempt sanctions is that *civil* contempt sanctions are intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained, while *criminal* contempt sanctions are intended to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct.").

Order must rise at least to the level of 'obstinence or recalcitrance'" in order for attorney's fees to be awarded. Columbia Gas Transmission Corp. v. Mangione Enterprises of Turf Valley, L.P., 964 F. Supp. 199, 204 (D. Md. 1996) (citing Omega World Travel, Inc. v. Omega Travel, Inc., 710 F. Supp. 169, 173 (E.D. Va. 1989)).

"Once a decision has been made to award attorney's fees, the district court has 'considerable discretion' in determining the amount of attorney's fees to award." Noor, 2012 WL 5286955, at *2 (quoting Colonial Williamsburg Found., 38 F.3d at 138). To determine the proper amount of attorney's fees, the court "first focus[es] on the time and labor expended and the customary fees for like work." Colonial Williamsburg Found., 38 F.3d at 138 (citations omitted). A reasonable hourly rate multiplied by the hours reasonably expended is referred to as the lodestar amount. After this initial determination, the court then considers whether an adjustment of the fee is appropriate. Id. (citation omitted).

## III.

There is no question that the injunction entered by this court on April 29, 2013 is a valid decree in favor of Allstar. Nor is there any question of Rookard's knowledge of the injunction or of the conduct that Allstar alleges to be contemptuous. The relevant questions before the court are whether Rookard's conduct violated the terms of the injunction and whether Allstar suffered harm as a result.

Listing Order of Ads

Allstar argues that the "at the top" language of the injunction required Rookard to put Allstar's ads at the top of these webpages, before any other advertisements. Rookard counters that the phrases "the same" and "as was previously provided" means that Allstar is entitled only to the advertising spots it had prior to the litigation—the second ad position on these pages.

Rookard contends that the "at the top" requirement is satisfied because the ads appear on screen when the pages are launched—thus, they are at the "top" part of the webpages.

The court finds the language of the injunction to be sufficiently ambiguous such that the disagreement over this provision is a good faith dispute. Allstar argues that the injunction was intended to change the pre-litigation status quo to a more favorable advertising position for Allstar in lieu of a monetary settlement of the underlying lawsuit. However, the plain text of the injunction—which Allstar helped craft—specifically states the ads' position would be "as was previously provided." This counters the notion of an intent to change the status quo. The court is unwilling to find an individual in contempt where the language of the order in question is subject to multiple plausible interpretations, particularly where the movant played a role in crafting the disputed terms.

Webpage Location of Ads

Rookard admits that he did not place Allstar's ads on the "first page" of his websites, but contends these pages are not the sites' "homepages." Rookard asserts that "[i]n web design a home page can be any page the designer chooses to point the link to" and that "[o]n the sites in question, (goluray.com, visitluray.com, goluray.com and shenandoahlodging.com) [the] cabins listing had their own homepages, these pages were called the home pages due to these pages contained every cabin listing on the sites mentioned above." (Additional Evidence by William Rookard, Dkt. No. 26-4, at 2) (errors in original). Allstars counters that Merriam-Webster defines "homepage" as "the part of a Web site that is seen first and that usually contains links to other parts of the site." (Pl.'s Supplemental Submission in Supp. of its Mot. to Enforce Permanent Inj. and for Civ. Contempt, Dkt. No. 28, at 3) (citing Merriam-Webster Online

Dictionary, http://www.merriam-webster.com/dictionary/home%20page (last visted Nov. 8, 2013)).

The court does not find the general usage of the term homepage material because the plain terms of the injunction itself define the specific webpage addresses subject to the injunction's command.  Put simply, for the purposes of these proceedings, a "homepage" is what the injunction says it is.  The ads were required to be on the webpages with the following web addresses: www.shenandoahlodging.com; www.visitluray.com; www.goluray.com; and www.vavacationcabins.com.  They were not.  The court accordingly finds that Rookard was in violation of the terms of the injunction by failing to provide Allstar ads at these web addresses.

There remains the question of harm.  While it is probably the case that fewer customers saw the Allstar ads due to their improper placement, Allstar has not put forward evidence with sufficient particularity for the court to find harm under the clear and convincing standard.  See Columbia Gas Transmission, 964 F. Supp. at 202 (citing In re Gen. Motors, 61 F.3d at 258) ("Each . . . element[] must be shown by clear and convincing evidence."); see also Wagner v. Bd. of Educ. of Montgomery Cnty., Maryland, 340 F. Supp. 2d 603, 619 (D. Md. 2004) ("To establish civil contempt, a movant must show each of the [] elements [outlined in Ashcraft] by clear and convincing evidence[.]").  Allstar has provided no information as to the relative fair market value of an ad on the homepages of these sites versus the cabins subpages, about how many more prospective customers would have viewed the homepages ads versus the cabins subpages ads, or about the extent to which Allstar's business could reasonably be expected to have been improved by moving the ads from the cabin subpages to the homepages.  The court thus cannot find Rookard in civil contempt for this aspect of his violation of the injunction as Allstar has failed to meet its burden in establishing harm by clear and convincing evidence.

Disparaging Ad

Allstar further asserts that an ad placed by Rookard on one of his website, an ad purportedly *for* Allstar, was disparaging.  The ad in question was as follows:

Want to use a booking agent? Well Allstar Lodging then! **Click Here!**
Want To Save $$$? Shenandoah Lodging has no hidden booking fees!!
Caution when using a booking agent beware of hidden fees and un-nessary charges! **Read More Here!**

Rookard does not deny creating this ad or placing it on his website.

There is no question that this ad is disparaging to Allstar.  It asserts that Allstar is (or uses) a booking agent and that "caution" is warranted when using such a booking agent due to "hidden fees" and "un-nessary [sic] charges."  The plain intent of the ad is to damage the reputation of Allstar and drive customers away.  This is the polar opposite of what an Allstar ad would be designed to achieve and is a clear violation of the injunction's non-disparagement clause.[2]

Publishing this ad was clearly harmful to Allstar.  Undoubtedly any person who saw it would be less likely to transact business with the company.  The purpose and effect of the ad is to damage Allstar's brand.  Allstar's owner, Carlos F. Ruiz, specifically avers that his business has suffered as a result of the ad.  He states that he has "spent a lot of time, money, and personal resources to develop the reputation of Allstar," and that he has had clients comment on the disparaging ad and his business after the ad was published was down from where it was the year prior.  (Second Aff. of Carlos F. Ruiz, Dkt. No. 16-1, at 2).  Accordingly, the court finds

---

[2] To the extent that Rookard intended this ad to comply with his obligation to place Allstar ads on his website, it is also a violation of the injunction.  It can hardly be viewed as an ad *for* Allstar.  Rookard did not fulfill the requirement to place an Allstar ad on his website with this ad any more than he would have by placing no ad at all.

Rookard in civil contempt for his violation of the non-disparagement clause of the court's injunction. This raises the question of the appropriate remedy.

Attorney's Fees

Rookard's violation is sufficiently egregious to warrant an award of attorney's fees. There can be no doubt that in placing the ad Rookard intended to do the very thing the injunction clearly and expressly forbade him from doing: disparaging Allstar. Such a willful violation of a court order, particularly as the parties mutually crafted and agreed to the injunction's terms, is sufficient to meet the "obstinence or recalcitrance" standard.

The court must therefore determine the proper amount of the attorney's fees award. Allstar asks for the attorney's fees it incurred in bringing the motion to enforce. Randall Miller, counsel for plaintiff, is a partner at the law firm of Venable LLP and states that he has "extensive experience with the Lanham Act and equity practice." (See Aff. of Randall K. Miller, Dkt. No. 28-2, at 1). Mr. Miller avers that his billing rate is $720 an hour, but that he reduced it to $650 an hour for this matter. He further states that he spent 9.1 hours related to the pending motion to enforce, which would result in an attorney's fees figure of $5,915, but that he reduced this amount by 10% to account for any potential objections related to inefficiency, rate, or other such concerns, arriving at a figure of $5,323. Id. at 1-2. Allstar requests that Rookard be ordered to pay this amount.

The court finds this sum inappropriate. First, while an hourly rate of $650 (or $720) may be well and good for Washington, D.C., and lawsuits involving multinational corporations, it is a simply enormous hourly rate for Harrisonburg, Virginia and a case involving two local small businesses. See In re Mullins, No. 7-80-00727HPA-11, 1996 WL 148527, at *3 (W.D. Va. Feb. 12, 1996) (citations omitted) ("The reasonable rate for purposes of the lodestar figure is

generally the prevailing market rate for comparable services in the community in which the services were rendered."); Hudson v. Pittsylvania Cnty., Va., No. 4:11CV00043, 2013 WL 4520023, at *3 (W.D. Va. Aug. 26, 2013) (citing Rum Creek Coal Sales, Inc v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994)) ("The relevant legal community is generally that in which the district court sits."). A recent fee award in the Western District of Virginia for an attorney with similarly high-caliber qualifications was $350 an hour. See Hudson, 2013 WL 4520023, at *3-4 (awarding an hourly rate of $350 to an attorney with "extensive experience" in handling cases of the nature before the court). The court will therefore exercise its discretion to reduce the hourly rate to $350, arriving at a lodestar figure of $3,185. Second, although Allstar has prevailed on its motion, the victory was not absolute. Indeed, the court found in favor of the defendant regarding two of the three activities Allstar alleged to be contemptuous. The court therefore finds it appropriate to adjust the fee accordingly, and award one third of the attorney's fees incurred to reflect that Allstar prevailed on one third of its motion. Cf. Rum Creek Coal Sales, 31 F.3d at 174 ("When a plaintiff prevails on only some of the claims made, the number of hours may be adjusted downward[.]"). As such, the court will award a fee of one thousand and sixty-one dollars ($1,061). Rookard shall be ordered to pay that amount.

An appropriate Order will be entered this day. The clerk is directed to send a copy of this Memorandum Opinion to the pro se defendant and counsel of record.

Entered: November 8, 2013

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge